# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **EDWARD CHARLES HOOPES,** | )<br>) |
| Plaintiff, | ) Case No. 1:12CV00068<br>) |
| v. | ) **OPINION**<br>) |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**[1] | ) By: James P. Jones<br>) United States District Judge<br>)<br>) |
| Defendant. | ) |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Patricia M. Smith, Assistant Regional Counsel, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Edward Charles Hoopes filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for a period of disability and disability insurance benefits pursuant to Title II

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34 (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. § 405(g).

Hoopes protectively applied for benefits on June 3, 2010, alleging disability since May 30, 2010. His claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on February 17, 2012, at which Hoopes, represented by counsel, and a vocational expert ("VE") testified. On March 28, 2012, the ALJ issued a decision finding that Hoopes could perform a full range of work at all levels of exertion with certain restrictions and thus was not disabled under the Act. Hoopes requested review by the Social Security Administration's Appeals Council. The Appeals Council first denied his request for review on September 24, 2012, but then vacated its decision to allow it to consider additional information the plaintiff submitted with his request. The Appeals Council found that the new information related to a period of time after the ALJ's decision, and therefore could have no effect on the validity of that decision.[2] On September 27, 2012, the Appeals Council again denied the plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Hoopes then filed a Complaint in this court seeking judicial review of the Commissioner's decision.

---

[2] The Appeals Council encouraged Hoopes to reapply for benefits if he wished to have the new information considered in evaluating his eligibility for benefits. (R. at 2.)

The parties have filed cross motions for summary judgment, which have been briefed and orally argued. The case is now ripe for decision.

II

Hoopes claims disability based on his seizure disorder, diabetes, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety. He is a high school graduate and previously worked for eleven years as a wirer attaching electrical boxes to utility trailers and for eight years as a cook and kitchen manager in a restaurant. (R. at 44-47.) He was 45 years old on the date of the ALJ's decision, making him a younger individual under the regulations. *See* 20 C.F.R. § 404.1563(c) (2012). The record indicates that Hoopes has not engaged in substantial gainful activity since the alleged onset date of May 30, 2010.

Hoopes claims that he became disabled as a result of a worsening seizure condition. (R. at 46.) Marivi M. Niebauer, M.D., a neurologist who evaluated the plaintiff on February 14, 2012, noted that his seizure history is vague. (R. at 485.) From 2000 to 2007, medical records indicate the plaintiff experienced occasional but infrequent seizures, and his condition appeared to respond well to medication. Steven W. Morgan, M.D., the plaintiff's neurologist, noted that Hoopes experienced seizures when he stopped taking proprietary Dilantin — a seizure medication — at the appropriate dosage. (R. at 234, 230.) Although the

regulations promulgated by the Virginia Department of Motor Vehicles prohibit individuals who have had a seizure in the preceding six months from driving, *see* Va. Dep't of Motor Vehicles, *Medical & Mental Requirements*, http://www.dmv.state.va.us/drivers/#medical/ spec_restrict.asp (last visited June 5, 2013), Dr. Morgan opined on multiple occasions that Hoopes's condition was sufficiently controlled to warrant his having a driver's license. (R. at 274, 280.) If the plaintiff suffered a seizure, as he did in 2002 and 2004, Dr. Morgan or an emergency room physician adjusted the plaintiff's medication levels to ensure he maintained a therapeutic level of Dilantin in his bloodstream. (R. at 315, 322.) Dr. Morgan cautioned Hoopes, who reported drinking three to four beers per day, about the danger that excessive alcohol consumption can pose for a person with epilepsy by lowering the potential threshold for having a seizure. (R. at 303.) Throughout his treatment of the plaintiff, Dr. Morgan observed the plaintiff's continued alcohol consumption, as well as his occasional failure to follow instructions in taking his medication. (R. at 230, 309, 307, 301.)

From early May 2010, shortly before his alleged onset of disability, and continuing through the date of the ALJ hearing, the plaintiff sought treatment increasingly frequently after experiencing symptoms of seizures.[3] Hoopes testified

---

[3] The record reflects that Hoopes sought treatment for seizures on the following dates: April 12, 2009 (R. at 413); May 4, 2010 (R. at 331); June 22, 2011, at which time he reported having had four seizures in the previous month (R. at 441); August 22, 2011

that his seizures last about 15 to 20 minutes and he experiences memory loss during these episodes. (R. at 50.) After suffering a seizure, he needs two hours to recover and is unable to lift ten pounds. (R. at 185.) Stress can sometimes induce his seizures and he does not handle changes to his routine well. (R. at 186.) He has been unable to hold a driver's license for five or six years as a result of the frequency of his seizures. (R. at 47.)

Before the plaintiff lost his job, allegedly because seizures were interfering with his work, his employer imposed a number of safety restrictions, such as not using power tools or climbing ladders. Upon the plaintiff's filing for disability benefits, two state physicians evaluated his medical records, and reached similar conclusions about the work restrictions necessitated by his seizure condition. (R. at 68, 77.) Both opined that Hoopes's condition causes him no exertional limitations, but does pose postural limitations that prohibit him from climbing ladders, ropes or scaffolding. They concluded that he should avoid even moderate exposure to hazards such as heights and machinery, and his ability to balance is limited. The doctors noted, however, that Hoopes' ability to stoop, kneel, crouch or crawl, among other work-related tasks, is unlimited.

---

(R. at 448); December 5, 2011 (R. at 471); December 11, 2011 (R. at 463); January 9, 2012 (R. at 452); January 25, 2012 (R. at 497); May 26, 2012 (R. at 584); and June 6, 2012 (R. at 519-527). Hoopes testified before the ALJ that he believes he was experiencing seizures at this rate for many years, but that his episodes went unnoticed or unreported because he lived alone at the time. He moved in with his brother in June 2011, who can now observe the frequency of his seizures. (R. at 51.)

Around the same time that Hoopes began to report more seizures, he also began seeking treatment for anxiety and depression. His primary care physician, David Parker, M.D., diagnosed the plaintiff to be suffering from anxiety, neuropathy, and depression, and referred him to Daniel Hardwick, Ph.D., a psychologist, for treatment. (R. at 341, 350, 437.) At his first appointment with Dr. Hardwick, the plaintiff described problems with anxiety, his separation from his fiancé, and his relationship with his mother. (R. at 433.) Noting few clinical findings, Dr. Hardwick diagnosed the plaintiff as suffering from major depression, recurrent, and assigned him a Global Assessment of Functioning ("GAF") score of 50.[4] (R. at 432.)

Dr. Hardwick held four treatment sessions with Hoopes. On November 11, 2010, they discussed the plaintiff's relationship issues and potential coping mechanisms. Dr. Hardwick noted that the plaintiff was casually groomed, had a labile affect, was oriented to time, place and person, and showed normal activity level, speech and thought processes. His mood was depressed and his judgment and insight were fair. (R. at 431.) On November 24, Dr. Hardwick noted

---

[4] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

improvement, describing the plaintiff's mood as "euthymic." (R. at 430.) The plaintiff continued to report improvement on December 3. On December 17, 2010, Dr. Hardwick observed that the plaintiff's mood was anxious, and his activity level was slow. The plaintiff blamed himself for the problems in his life, which Dr. Hardwick believed suggested a potential for paranoid ideation. (R. at 428.)

Dr. Hardwick saw Hoopes again on February 11, 2011, when he completed an assessment of the plaintiff's ability to do work-related activities. (R. at 435-36.) This assessment recorded no clinical findings to support the conclusions therein. Dr. Hardwick opined that the plaintiff has a fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, and maintain attention and concentration. Dr. Hardwick concluded that Hoopes has poor or no ability to interact with supervisors, deal with work stress, or function independently.

Dr. Hardwick did not see the plaintiff again until December 30, 2011, at which time he noted improvement in the plaintiff's condition, characterizing him as well-groomed and cooperative. He had normal motor activity and speech, and his thought process, memory, judgment and insight were intact. Hoopes' mood was euthymic, his affect was appropriate, and he was oriented to time, place and

person.  Dr. Hardwick continued, however, to assign the plaintiff a GAF score of 50.[5]  (R. at 483.)

A number of Dr. Hardwick's conclusions regarding the plaintiff's inability to function outside his home are contradicted by the plaintiff's descriptions of his abilities and daily activities.  At the time he applied for disability benefits, Hoopes reported that he lived alone and was able to prepare meals, wash dishes and clothes, clean the house, and do projects around his home including cut the grass.  (R. at 180.)  He shopped for groceries every Saturday, which he could accomplish by himself.  (R. at 183.)  He enjoyed watching television and playing computer games, an activity he had to limit to some degree because of his seizure disorder.  (R. at 184.)  He reported that he walked daily, and could follow instructions and get along with authority figures with no difficulty.  (R. at 185.)  He is also able to pay bills, count change, and generally manage his finances without assistance.  (R. at 183.)  Finally, Hoopes reported that he has no problems getting along with family, friends or neighbors.  (R. at 185.)

---

[5] Following the ALJ's decision the plaintiff sought additional treatment at Twin City Medical Center and from Licensed Professional Counselor Bill McFeature.  The plaintiff submitted these records to the Appeals Council for its consideration of his claim.  S*ee Wilkins v. Sec'y, Dept' of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (holding that where the Appeals Council considers additional evidence and incorporates it into the record, a reviewing court must also consider the new evidence as part of the record).  I find that these records do not affect the ALJ's determination.

At the hearing, the ALJ posed two hypotheticals for the VE's consideration in determining whether the plaintiff had the residual functional capacity ("RFC") to perform jobs existing in the national economy. First, the ALJ asked the VE to consider whether any jobs existed that could be performed by a high school graduate of the plaintiff's age who has no exertional limitations, but who can never climb and can balance at most only frequently. The VE opined that such a person could work as a cashier, of which there are 30,000 positions in Virginia and over 1.1 million in the United States.[6] (R. at 60.) The ALJ's second hypothetical for the VE involved an individual with the same characteristics as the first, with the added work-related limitations of having poor or no ability to interact with supervisors, deal with work stress, or function independently — the limitations Dr. Hardwick stated that the plaintiff suffered in his February 2011 evaluation. The VE opined that no jobs could be performed by such a person. (R. at 62.)

The ALJ found that Hoopes suffers from the severe impairments of major motor seizures, COPD, and anxiety, all of which impose more than minimal limitations on his ability to work. The ALJ noted that medical records indicate that the plaintiff's seizures, when properly treated with medication, could be well-

---

[6] The transcript of the hearing reflects that the VE testified that there are "1.1 billion" cashier positions in the United States. This is clearly either a transcription error, or an unintentional misstatement by the VE. I will assume that the VE's testimony should have been that there are 1.1 million such positions in the national economy. The parties have not raised this issue in their briefing.

controlled.  In determining RFC, the ALJ accommodated the plaintiff's condition by providing for environmental restrictions.  The ALJ concluded that Hoopes can perform a full range of work at all exertional levels, but can never drive or climb ladders, ropes or stairs.  He also can never be exposed to unprotected heights or dangerous equipment or products.

The ALJ, however, did not find Dr. Hardwick's assessment of the plaintiff's inability to function in a work environment to be supported by the evidence.  The ALJ noted the inconsistencies between Dr. Hardwick's treatment notes and his February 2011 assessment.  The ALJ pointed out that in his most recent assessment, Dr. Hardwick noted no functional deficits that support his prior conclusion that the plaintiff would be unable to function in an employment setting.  In addition, although some of the plaintiff's other treating physicians noted symptoms of depression or anxiety, none described the sort of severe limitations that would support Dr. Hardwick's conclusions.  Finally, the ALJ found that the plaintiff's testimony and his statements in the Adult Functions Reports indicate that his non-exertional limitations are not as severe as Dr. Hardwick's assessment indicated.  Based on this RFC assessment and the VE's testimony, the ALJ held that Hoopes is capable of performing jobs that exist in significant numbers in the national economy and therefore is not disabled as defined by the Act.

Hoopes contests the ALJ's decision, arguing that he failed to accord proper weight to the opinion of a treating physician — Dr. Hardwick — in evaluating the total effect of all the plaintiff's conditions, both exertional and non-exertional. As a result, Hoopes contends that the RFC determination is not supported by substantial evidence, given the ALJ's failure to make an individualized evaluation of the plaintiff's mental impairments and his failure to specifically evaluate the plaintiff's ability to function outside the home. The Commissioner argues that the ALJ reasonably accommodated the plaintiff's seizure disorder by placing restrictions on his RFC and that he complied with applicable regulations for evaluating medical source opinions in his consideration of Dr. Hardwick's assessment.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility

determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted).

In this case, the plaintiff argues that the ALJ's decision is not supported by substantial evidence because he did not adequately consider the limitations imposed on the plaintiff by his mental impairments. Specifically, the plaintiff challenges the ALJ's decision to accord less weight to Dr. Hardwick's February 2011 assessment, which was completed after five treatment sessions and which makes specific findings regarding the plaintiff's residual capacity to work, while according substantial weight to Dr. Hardwick's subsequent and isolated evaluation of the plaintiff in December 2011.

"Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). For that reason, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In this case, the ALJ not only fully considered Dr. Hardwick's opinion but also properly discounted it

for lack of supporting clinical evidence and for its inconsistencies with other substantial evidence.

First, it is clear that the ALJ fully considered Dr. Hardwick's opinion because he requested during the hearing that the plaintiff describe the evidence that substantiated those conclusions. (R. at 40.) Dr. Hardwick's February 2011 assessment lists no clinical findings about the plaintiff's mental impairments. (R. at 435-36.) The assessment is merely a check list unsupported by a description of symptoms. Moreover, Dr. Hardwick's treatment notes from both prior and subsequent sessions with the plaintiff contradict the contention that the plaintiff's limitations are so severe. Dr. Hardwick consistently found Hoopes to be oriented to time, place and person with normal speech, activity level, and thought processes. Hoops was an active participant in his treatment and demonstrated fair judgment and insight. In his most recent visit, Dr. Hardwick found Hoopes to be well-groomed, cooperative, and euthymic. All of these observations support a finding that Hoopes could function in a work environment outside of his home. Moreover, Dr. Hardwick's treatment notes consistently indicate that the focus of their sessions was personal relationships and medical problems. The progress notes make no mention of discussions of work or financial stress that might support Dr. Hardwick's assessment of the plaintiff's ability to work.

The plaintiff's testimony regarding his management of his personal affairs is additional substantive evidence that contradicts Dr. Hardwick's assessment. The plaintiff testified that he had lived alone, prepared his own meals, and did his own chores around the house. He is capable of managing his finances and can do his own shopping. Furthermore, he interacts with his family on a daily basis and attends his medical appointments, taking an active role in his care. This information, derived from the plaintiff's statements, is substantial evidence contradicting Dr. Hardwick's conclusion that the plaintiff has poor or no ability to function independently, maintain his personal appearance, or perform other work-related tasks. Finally, the plaintiff stated in his Adult Functions Report that he could follow directions and get along with supervisors, which directly contradicts Dr. Hardwick's conclusions. Given the absence of clinical findings in the record, as well as the substantial evidence of the plaintiff's ability to function independently, including his long history of prior successful employment, the ALJ was entitled to accord less weight to Dr. Hardwick's opinion.

The plaintiff's arguments focus on the ALJ's failure to adequately consider his limitations due to his mental impairments, specifically in conjunction with his physical limitations resulting from his seizure disorder. Although Dr. Parker diagnosed the plaintiff with depression and anxiety, he made no findings about the severity of those conditions or the limitations they imposed. The plaintiff gave

only very limited testimony about his anxiety before the ALJ, stating that his nerves caused him to tremble and that his seizure disorder caused him additional stress. (R. at 52-53.) There is no other evidence in the record regarding the plaintiff's mental impairments. As the ALJ was entitled to give less weight to Dr. Hardwick's assessment, therefore, he was also entitled to rely on the VE's testimony that a person with the plaintiff's physical limitations, but with no specified mental impairments could perform jobs that exist in substantial numbers in the national economy.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits for the relevant time period.

DATED: June 5, 2013

/s/ James P. Jones
United States District Judge